UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 14-20716-CIV-TURNOFF

[CONSENT CASE]

YOJAN CABRERA and all others similarly )
situated under 29 U.S.C. 216(b), )
 )
          Plaintiff, )
vs. )
 )
SPEED SERVICES, INC. )
SPEED CONSTRUCTION SERVICES, INC. )
JOHN M HERNANDEZ, )
 )
          Defendants. )
_____ )

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW the Plaintiff, through undersigned counsel, and moves for summary judgment as follows:

1. This matter sounds under the Fair Labor Standards Act ("FLSA") regarding unpaid wages.

2. This Court should enter a partial summary judgment finding that jurisdiction under the FLSA exists and that both Corporate Defendants are part of a joint enterprise, that both Corporate Defendants are Plaintiff's joint employers, that the individual Defendant is liable should FLSA violations be proven at trial, and that Plaintiff is not an independent contractor but an employee under the law.

**MEMORANDUM OF LAW AND ARGUMENT**

**A. SUMMARY JUDGMENT STANDARD**

Pursuant to Fed.R.Civ.P. 56, a summary judgment should be granted if, following

1

sufficient discovery, there is no genuine issue of material fact to be decided by a jury; therefore summary judgment is to be granted as a matter of law. *Hoffman v. Allied Corp., et al.,* 912 F.2d 1379, 1383-84 (11th Cir. 1990), *citing, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining if a genuine issue exists, the court must query whether "a reasonable jury could return a verdict for the nonmoving party…." *Hoffman v. Allied Corp., et al.,* 912 F.2d at 1383. *See also, Beal v. Paramount Pictures Corporation*, 20 F.3d 454, 459 (11th Cir. 1994)("Summary Judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law"); *Silas v. Hillsborough County*, 2006 U.S. Dist. LEXIS 79503, *3-4 (M.D. Fla. 2006)(in FLSA matter court found "[s]ummary judgment is proper if following discovery … there is no genuine issue as to any material fact….").

**B.      FLSA COVERAGE/SUBJECT MATTER JURISDICTION IS PRESENT**

Defendants operate as an enterprise covered under the act. As acknowledged in *Rodriguez v. Diego's Rest., Inc.*, 619 F. Supp. 2d 1345, 1350 (S.D. Fla. 2009), the issue of coverage under the FLSA has incorrectly been coined as an issue of Subject Matter Jurisdiction.

29 U.S.C. 203(s)(1) defines "enterprise" coverage as an enterprise that has employees "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." As stated in *Galdames v. N & D Inv. Corp.*, 2008 U.S. Dist. LEXIS 73433 (S.D. Fla. 2008):

> "It is notable how many courts in the past three-and-a-half decades have concluded that virtually any enterprise that meets the statutory annual gross sales

requirement is subject to the FLSA. *See, e.g., Dunlop v. Indust. America Corp.*, 516 F.2d 498, 500-02 (5th Cir. 1975) [6] (referring to the 1961 expansion, and noting "[t]his change extended coverage to businesses with employees engaged in handling or utilizing goods after they had ceased the interstate portion of their movement. This approach reached those nearer the end of the chain of distribution, e. g., retail and service establishments whose businesses were otherwise local in character."); *Archie v. Grand Cent. Partnership, Inc.*, 997 F.Supp. 504, 530 (S.D.N.Y. 1998) ("The bill also adds the word 'or materials' after the word 'goods' to make clear the Congressional intent to include within this additional basis of coverage the handling of goods consumed in the employer's business, as, e.g., the soap used by a laundry. . . . Since 1974, courts facing the issue presented here have unanimously come to the same conclusion: local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce."); *Dole v. Bishop,* 740 F. Supp. 1221, 1225-26 (S.D.Miss.1990) ("[P]ursuant to a 1974 amendment, . . . in order for an enterprise to be engaged in commerce, it must have employees 'handling, selling, or otherwise working on goods or materials' that have moved in interstate commerce. This amendment adding the words  'or materials' leads to the result that virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA.") (internal citation and emphasis omitted); *Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc.*, No. 8:07-cv-2359-T-23TGW, 2008 U.S. Dist. LEXIS 23007, 2008 WL 793660, at *1 (M.D.Fla. Mar. 24, 2008) ("[E]nterprise coverage embraces virtually every business whose annual gross volume of sales or business is $ 500,000 or more . . . .")"

"Because enterprise coverage embraces virtually every business whose  annual gross volume of sales or business is $ 500,000 or more,   "the most salient element of an 'enterprise' allegation will be the amount of business a defendant does." *Farrell v. Pike,* 342 F. Supp. 2d 433, 439 (M.D.N.C. 2004). Cited by *Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc.*, 2008 U.S. Dist. LEXIS 23007 (M.D. Fla. 2008).

3

As it relates to the first element of interstate commerce, the work performed by both Plaintiff and his fellow employees met the required standard. Defendants employed two or more employees, alongside Plaintiff, who regularly would use products that originated or were manufactured outside the State of Florida such as: sheet rock from Chicago, IL; concrete mix from California; durock also from Chicago, IL; and interior and exterior semi-gloss from Santa Ana, CA. See Plaintiff's Statement of Material Facts ("PSMF"), filed concurrently with this Motion, at ¶1.

As to the second element of gross sales or business done over $500,000 annually, the Defendants met such criteria. The Former Fifth Circuit has held that the gross volume of business done should not be narrowly construed. *Hodgson v. Colonnades, Inc.*, 472 F.2d 42, 48 (5th Cir. 1973). Citing *Wirtz v. Allen Green & Associates, Inc.*, 379 F.2d 198, 200 (6 Cir., 1967), the Fifth Circuit found that "annual gross volume" was not limited to sales and that "any gain of capital assets derived from construction activities" also constituted business done under Section 203(s)(4) of the FLSA. *Hodgson*, 472 F.2d at 48.

For the year 2011, Defendant Speed Services, Inc. made gross sales in the number of $667,730 and for the year 2012, Defendant Speed Services, Inc. made gross sales in the number of $648,148. PSMF at ¶2. As such, the $500,000 prong of enterprise coverage has been met for Defendant Speed Services, Inc. for the years 2011 and 2012.

For the year 2013, Defendant Speed Services, Inc. made gross sales in the number of $299,364. PSMF at ¶2. When asked why there was a dip in gross sales between 2012 and 2013, Defendants' accountant Manuel Duarte testified that it was because Speed Services' accounts and clients were being moved over to Speed Construction Services,

Inc. *Id*. However, Defendant Speed Services, Inc. can still exceed the $500,000 threshold when stacked with Defendant Speed Construction Services, Inc.'s gross sales or business done as a joint enterprise. Defendant Speed Construction Services, Inc. made $137,485 in gross sales in 2012 and $1,916,887 in gross sales in 2013. PSMF at ¶2.

The $500,000 threshold can be achieved by stacking the income of both Defendant Companies involved in a joint enterprise. "Related activities conducted by what may be **separate business entities are considered as part of the same enterprise** if they are joined either through common control or unified operation into a unified business system or economic unit to serve a common business purpose." *Brennan v. Patio Cleaners, Inc.*, 373 F.Supp 987, 990 (S.D. Ohio 1974) (emphasis added). The term "enterprise" is defined under 29 USC Section 203(r)(1). Regarding common control and business purpose, *see also, Marshall v. Suicide Prevention of Florida*, 1977 U.S. Dist. LEXIS 14681, *2 (S.D. Fla. 1977). In *Marshall*, the Southern District of Florida, as did *Nelson v. Long Lines Ltd.*, 335 F.Supp.2d 944 (N.D. Iowa 2004), made it clear that the $500,000 prong may be met by stacking the income of a common enterprise involved in a unified business purpose. *Marshall,* 1977 U.S. Dist. LEXIS 14681, *2. *Marshall* used "a liberal construction of the Act" and found "that the defendants were clearly an enterprise…." *Id.* at *9. *See, also Kaplun v. Lipton*, 2007 U.S. Dist. LEXIS 15287 (S.D. Fla. 2007), *5-6, *citing Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1986)(court acknowledged that an "enterprise" factors in questions regarding unified operation and common control, and noted that "a finding of enterprise coverage does not necessarily compel a finding of joint liability".)

Both Defendants Speed Services, Inc. and Speed Construction Services, Inc. are

joined through common control or a unified operation into a unified business system or economic unit to serve a common business purpose. *Brennan* at 990. Both Corporate Defendants share Defendant John M Hernandez as a major officer. PSMF at ¶13. Between the two Corporate Defendants, each company would loan the other company money to meet debts, such as paying for goods or covering payroll. PSMF at ¶11. Per the testimony of Defendants' accountant Manuel Duarte, "Speed Construction Services is assuming the accounts, the clients that Speed Services – that used to be Speed Services." PSMF at ¶12. Indeed, as mentioned above, the very reason why Defendant Speed Services, Inc. individually did not gross over $500,000 in 2013 is because Defendants began moving clients and accounts between the two companies, per Manuel Duarte. PSMF at ¶2. Defendant Speed Services, Inc. lacks the license to perform work outside of Miami-Dade County, but Defendant Speed Construction Services, Inc. has such license and it allows Defendant John M Hernandez to extend the Defendants' business beyond the county to the rest of Florida. PSMF at ¶10. Both Corporate Defendants occupy the same office and share the rent on the building. PSMF at ¶8-9. Both Corporate Defendants share employees. PSMF at ¶6. Even Defendants' employees cannot differentiate between the two entities because they are so intertwined. *Id.* Company cards and vehicles provided by one company would be used for all the jobs between both companies. PSMF at ¶25.

As the Corporate Defendants are part of a joint enterprise, their incomes during the relevant time period can be stacked together to achieve gross sales in excess of $500,000. *Marshall,* 1977 U.S. Dist. LEXIS 14681, *2. Defendant Speed Services, Inc.'s gross sales alone make the joint enterprise meet the $500,000 prong during the years of

2011 and 2012. While Defendant Speed Services, Inc. only made a little less than $300,000 in gross sales in 2013, Defendant Speed Construction Services, Inc. made $1,916,887 in gross sales in 2013. Altogether, the joint enterprise made over $2 million in gross sales during 2013 (or $2,054,372, to be specific). The joint enterprise between Defendants Speed Services, Inc. and Speed Construction Services, Inc. absolutely meets the $500,000 prong of enterprise coverage.

Consequently, under *Polycarpe et al. v. E & S Landscaping*, 616 F.3d 1217 (11th Cir. 2010), the $500,000 threshold has been met, and clearly two (2) or more of Defendants' employees, on a regular basis, were handling goods and materials that originated from outside the State of Florida. Therefore coverage and FLSA jurisdiction exists.

**C.     INDIVIDUAL DEFENDANT JOHN M HERNANDEZ IS LIABLE AS A FLSA EMPLOYER.**

The term "employer" ought be interpreted more broadly under the Act than common law for remedial purposes. *See, e.g., Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2nd Cir. 1999); *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir. 1991), *citing McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989); *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983); *Falk v. Brennan*, 414 U.S. 190, 195 (1973).

Further, multiple employers may be responsible for compliance with the FLSA within one business organization. *See*, *Elliott Travel & Tours, Inc.,* 942 F.2d at 965; *Agnew*, 712 F.2d at 1510. "[B]oth the employing corporation and the individual responsible for operation thereof may be employers for purposes of the FLSA." *Figueroa v. America's Custom Brokers, Inc.,* 48 F.Supp.2d 1372, 1377 (S.D. Fla. 1999), *citing Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986). In the Eleventh Circuit, "[t]he

7

overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel*, 803 F.2d at 637-38, *quoting Agnew*, 712 F.2d at 1511.

Financial control over a corporation is a significant factor in determining "employer" status. *See, Elliot Travel & Tours*, 942 F.2d 966 (6th Cir. 1991); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984)(imposing FLSA liability on a "top man" who guided corporate policies and controlled "purse strings"); *Donovan v. Sabine Irrigation Co., Inc.*, 695 F.2d 190, 193-95 (5th Cir. 1983)(liability for controlling finances and dominating the administration); *Dole v. Simpson*, 784 F.Supp. 538, 545-47 (S.D. Ind. 1991). Personal liability may also arise from significant ownership interest coupled with operational control. *See, Agnew*, 712 F.2d at 1514. Liability may also be found even if control is restricted or exercised only occasionally as such does not diminish the significance of the existence of such control. *Herman*, 172 F.3d at 139, *quoting*, *Donovan v. Janitorial Servs, Inc.,* 672 F.2d 528, 531 (5th Cir. 1982).

As stated above, Defendant John M Hernandez is an officer of both companies; specifically, he is Vice President of Defendant Speed Services, Inc. as well as President of Defendant Speed Construction Services, Inc. and he was previously its Vice President. PSMF at ¶13. Defendant Hernandez owns 60 to 50 percent of Defendant Speed Services, Inc. PSMF at ¶17. He signed checks for on behalf of the Corporate Defendants for Plaintiff's work. PSMF at ¶14. He was a signatory on both of Defendant Speed Services, Inc.'s business operating accounts. PSMF at ¶15. Defendant Hernandez determined employees' hourly rate of pay and had the authority to hire/fire employees and acted upon

such authority. PSMF at ¶16. Defendant Hernandez, by his own admission, interviewed and hired Plaintiff. PSMF at ¶18-19. Defendant Hernandez terminated the Plaintiff. PSMF at ¶20. Defendant Hernandez was involved in the day to day operations of the Corporate Defendants as he would give orders and supervise employees. PSMF at ¶22. Furthermore, based on his dealings with the Defendant, Plaintiff always regarded him as his sole supervisor, only receiving orders from him; additionally, Defendant Hernandez was the one who set schedules and which workers went to what job sites. PSMF at ¶22. Defendant John M Hernandez himself provided Plaintiff with welder training. PSMF at ¶21.

The stated undisputed facts lead to the inescapable conclusion that the individual Defendant John M Hernandez is a FLSA employer under the relevant caselaw *supra*, and he should be held individually and jointly and severally liable with the Corporate Defendants should Plaintiff prevail at trial.

D.   **A JOINT EMPLOYER RELATIONSHIP EXISTS BETWEEN THE CORPORATE DEFENDANTS**

Plaintiff contends that there is a joint employer relationship between the Corporate Defendants and therefore all the Corporate Defendants are liable as Plaintiff's joint employers.

For the purposes of joint employer, Plaintiff references *Layton v. DHL Express, Inc.*, 686 F.3d 1172, 2012 U.S. App. LEXIS 13978, (11th Cir. 2012). In *Layton*, the Eleventh Circuit affirmed the District Court's grant of summary judgment in favor of the

Defendants on the basis that the economic realities of the relationship between Plaintiffs and Defendant DHL did not reveal DHL as a joint employer of Plaintiffs.[1]

*Layton* is instructive as to the scope of the economic realities test and when and how it should be used. The Eleventh Circuit elaborates that "the eight factors of *Aimable* are only useful to us to the extent that they shed light on the existence of economic dependence." *Layton* at *24, citing *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996). The Eleventh Circuit further goes on to point out that the Court's "undertaking is oriented by the desire to discover the economic reality of the total circumstances, and the eight-factor test is merely a template for reaching that goal-**a template more useful in certain cases than in others**." *Id.* (emphasis added). The Court also noted that no one factor is determinative, that the factors are used to gauge the degree of dependence of alleged employees on the business to which they are connected, and as such the "weight of each factor depends on the light it sheds on the workers' economic dependence (or lack thereof) on the alleged employer, which in turn depends on the facts of the case." *Id.* at *14. The eight factor test laid out in *Layton* is a handy guideline to determining economic dependence, but its prongs are merely suggestions that may or may not be instructive depending on the matter. There are circumstances where the realities of an

---

[1] *Layton* uses an 8 part economic realities test for the purpose of determining if a joint employer relationship exists. The 8 factors are as follows:
1) The nature and degree of control of the workers;
2) The degree of supervision, direct or indirect, of the work;
3) The power to determine the pay rates or the methods of payment of the workers;
4) The right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers;
5) Preparation of payroll and the payment of wages;
6) Ownership of the facilities where work occurred;
7) Performance of a specialty job integral to the business;
8) Investment in equipment and facilities.

*Layton* at 1176.

economic dependence may exist outside the view of those eight factors, and as such the eight-factor test may not always be the appropriate measure to test economic dependence.

Regarding the first two prongs of the *Layton* test- control and supervision- Defendants meet such prongs. Both Corporate Defendants, through Defendant John M Hernandez, would issue Plaintiff orders on work for jobs for both Speed Services, Inc. and Speed Construction Services, Inc. such as where to go, services to perform (whether to paint, to rope, etc), making deposits at bank, making deliveries, etc. PSMF at ¶3. Both Speed Services, Inc. and Speed Construction Services, Inc., through John M Hernandez, would supervise Plaintiff both directly and indirectly; Hernandez would directly issue orders to Plaintiff up until last year, where he would then indirectly issue orders to Plaintiff via a proxy. PSMF at ¶4. Defendant Speed Services, Inc. would "sub" Plaintiff to Defendant Speed Constructions Services, Inc., who would do the same job functions between the two companies. PSMF at ¶5. As mentioned above, Defendant Hernandez determined who went to what jobs sites. PSMF at ¶22.

Regarding the third and fifth prongs of the *Layton* test- payrates, method of payment, preparation of payroll, and actual payment of wages- Defendants again met such prongs. Plaintiff received two sets of checks: one from Defendant Speed Services, Inc. and one from Speed Construction Services, Inc. PSMF at ¶7. Specifically, Speed Services, Inc. would pay through ADP and Speed Construction would pay through a direct company check. PSMF at ¶7. Both companies provided Plaintiff with W-2's. PSMF at ¶7.

As for the fourth prong- hiring, firing, and modifying employment conditions- it's already been established above that Defendant John M Hernandez, in the process of running both Defendants, possessed such powers and acted upon them.

In terms of ownership of the facilities- the sixth prong of the *Layton* test- Defendants did not own any facilities. Defendants did, however, rent an office space that they shared and both Defendant Companies cooperated in the responsibility of paying the rent on the office space. PSMF at ¶8-9.

Then there is the matter of Plaintiffs' performance of a specialty job integral to the business. The Eleventh Circuit in *Layton* explains that "a worker who performs **a routine task that is a normal and integral phase of the [alleged employer]'s production** is likely to be dependent on the [alleged employer]'s overall production process." *Id.* at *8, quoting *Antenor,* 88 F.3d at 937 (emphasis added). The factor revolves around how integral and how routine the process is to the alleged employer's work. Nothing in the record suggests that Plaintiffs' work is exotic or atypical of the work that Defendants do. Defendants' business performs building maintenance which includes performing painting, tiling ("setting tiles, floor tiles, wall tiles"), and "whatever has to do with building maintenance." PSMF at ¶23. Plaintiff's job duties primarily are integral duties normal to Defendants' business, such as changing tiles, sheetrock, welding, ceiling tiles, and painting parking lots and walls. PSMF at ¶23. While the work Plaintiff performed was integral to the business, he did standard maintenance work no different from any other employee for either company and his duties were not a specialty. PSMF at ¶23.

Then there is the matter of investment. The Defendants provided Plaintiff a company van for travel. PSMF at ¶24. Plaintiff did not provide his own materials but rather used a company provided card- provided by Defendants- to purchase materials. PSMF at ¶25. The company card and aforementioned vehicle were both provided by Speed Construction Services, Inc. but used for all jobs. PSMF at ¶25. The Defendants provided meals, lodging, and transportation (via the aforementioned company vehicle) for the out of town worked Plaintiff performed for Defendants. PSMF at ¶26. Defendant John M Hernandez even testified to paying for an apartment for Plaintiff for 2 months. PSMF at ¶26.

The eight factor test as laid out in *Layton* supports a clearly support a conclusion of a joint employer relationship. As such, all the Corporate Defendants should be found liable for failure to pay overtime wages under the FLSA.

E. <u>**PLAINTIFF WAS NOT AN INDEPENDENT CONTRACTOR**</u>

Defendants' Answers and Affirmative Defenses at [DE 38] do not explicitly plead independent contractor as an affirmative defense. At best, Defendants' Affirmative Defense No. 7 simply claims that Plaintiff is not an employee generally, but does not elaborate the legal reason as to why or any specific legal defense. As such, Defendants cannot claim an independent contractor defense as they have waived the affirmative defense.

In an Eleventh Circuit decision, the Court reversed the district court for allowing Defendants to amend their pleadings to assert an affirmative defense at trial. *Diaz v. Jaguar Rest. Group, LLC*, 627 F.3d 1212 (11th Cir. Fla. Dec. 13, 2010). See also, *Donahay v. Palm Beach Tours & Transportation*, 243 F.R.D. 697 (S.D. Fla. 2007)

(defendants sought to amend answer and affirmative defenses seeking a declaration that would trigger the Motor Carrier Act, and this Court found that simply failing to timely plead is not good cause). See also *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir.2010) ("Failure to plead an affirmative defense generally results in a waiver of that defense."). See also *Fla. Health Scis. Ctr., Inc. v. Humana Med. Plan, Inc.*, 190 F. Supp. 2d 1297, 1304 (M.D. Fla. 2001) ("Failure to plead an affirmative defense generally results in the waiver of the defense. An affirmative defense must be pleaded in the answer in order to give the opposing party sufficient notice of the defense and the ability to gather proper evidence and develop arguments to refute the defense."). See also Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense".) In the instant matter, Defendants never moved to amend, and thus waived any specific independent contractor defenses as they were never pled as affirmative defenses. Nor has Plaintiff given implied or express consent to the issue. *Diaz*, 627 F.3d at 1214, citing Fed. R. Civ. P. 15(b).

The United States District Court for the District of South Carolina, Charleston Division, dealt with the issue in *Rotondo et al. v. Cite of Georgetown*, 869 F. Supp. 369 (Dist. S.C. 1994). In *Rotondo*, Defendants elected to assert the affirmative Defenses of the executive and/or administrative exemption for the first time on their motion for summary judgment. The Court in response stated:

> In its Motion for Summary Judgment, Defendant raises for the first time the defense that Plaintiffs Anderson, Johnson, Pack, and Ward are exempt from the overtime provisions of the FLSA as executive and/or administrative employees as defined by 29 C.F.R. § 541. **The assertion of an exemption from the mandates of the FLSA is an affirmative defense that must be specifically pleaded by an employer or it is waived**. *Renfro v. City of Emporia*,

> 741 F. Supp. 887, 888 (D. Kan. 1990), aff'd, 948 F.2d 1529, 1539 (10th Cir. 1991). Therefore, because Defendant had not specifically pleaded this affirmative defense for Plaintiffs Anderson, Johnson, Pack, and Ward prior to its Motion for Summary Judgment, **this court finds that Defendant has waived this defense**. [Emphasis added].

Id at 374. *See also, Wright v. AARGO Security Services, Inc.*, 2001 U.S. Dist. LEXIS 882, *6 (S.D. NY 2001). Analogously, in *Day v. Liberty National Life Insurance Company*, 122 F.3d 1012, 1015 (11th Cir. 1997), the Eleventh Circuit found the statute of limitations defense to be waived if not pled. ("The statute of limitations is an affirmative defense which must be specifically pled. Fed.R.Civ.P. 8(c)."). As Defendants have failed to assert the affirmative defense for independent contractor, said affirmative defense has been waived, see *Diaz*, 627 F.3d at 1215.

As mentioned above, the only Affirmative Defense pled by Defendants that may be considered to fall under independent contractor is Affirmative Defense No.7. Defendants' pleading specifically states "Plaintiff was never an employee of the Defendants pursuant to the FLSA and Defendants are not covered by the FLSA." [DE 38]. Defendants cannot rely on such grossly vague and general pleadings to allege the Independent Contractor Affirmative Defense was pled. Nothing about the pleading puts Plaintiff on notice regarding the Independent Contractor Defense.

Even if Defendants did properly plead the affirmative defense- and Plaintiff maintains they did not- Plaintiff is not an independent contractor but rather an employee under the law. An employee, as defined by 29 U.S.C. § 203(e)(1), is any individual employed by an employer. An employer includes any person acting directly or indirectly in the interest of an employer in relation to the employee. 29 U.S.C. § 203(d). An employment relationship is decided by applying the economic realities test. *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1319 (D. Fla 2001).

The economic realities test for independent contractor in *Santelices* is similar to its joint employer application in *Layton*. In applying the *Santelices* economic realities test, the Court should consider the following factors: (1) the nature and degree of control of the workers by the alleged employer; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skills; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered required a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business. *Santelices* at 1319.

The above joint employer analysis already established the first, third[2], and sixth prongs in favor of Plaintiff as an employee and not as an independent contractor. Regarding the second prong- the alleged employee's opportunity for profit or loss depending upon his managerial skills- Plaintiff's managerial power did not affect his opportunity for profit as he did not have any. Defendant John M Hernandez made all managerial decisions regarding Plaintiff's work and Plaintiff did not make such decisions, nor did he stand to profit or loss from his decisions on the job. PSMF at ¶28.

Then there is the degree of permanence of the working relationship between Plaintiff and the Defendants. Until his termination, Plaintiff's employment with Defendants was a permanent fixture with Defendants, working all day and even sometimes on the weekends, having worked there as a regular employee since 2010, except for a personal sabbatical in 2011. PSMF at ¶30.

---

2 In addition to Defendants having invested in materials and vehicles, Plaintiff did not hire helpers. PSMF at ¶29.

As to the fourth prong- special skill- it has been established above that Plaintiff's duties were no different or atypical from the normal services the Defendants performed on a regular basis. PSMF at ¶23.

In *Jeanneret v. Aron's East Coast Towing*, 2002 U.S. App. Lexis 27699 (11th Cir. 2002), the Appellate Court affirmed the District Court's definition of an employer and employee under the FLSA. "Section 203(d) of the FLSA defines an "employer" as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.' However, economic dependence determines the employer/employee relationship under the Act. See, *Apolinar Martinez-Mendoza et.al. v. Champion International Corporation*, 16 Fla. L. Weekly Fed. C945, (11th Cir. 2003). The Eleventh Circuit stated at HN13 that "in entertaining and assessing the evidence relevant to the inquiry called for by a given factor, the question the district court must ask itself is whether such evidence, considered as a whole, supports (or fails to support) the laborer's claim that he is economically dependent on the putative employer." [emphasis added]. Plaintiff only worked for Defendants and relied entirely on Defendants' business, never working side jobs and only for Defendants. PSMF at ¶27. In this case, Plaintiff was economically dependent on Defendants during the relevant employment period.

WHEREFORE, THE PLAINTIFF REQUESTS THAT THE COURT ENTER A PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS AND FIND AS A MATTER OF LAW THAT FLSA COVERAGE/SUBJECT MATTER JURISDICTION EXISTS, THAT THE INDIVIDUAL DEFENDANT JOHN M HERNANDEZ IS AN INDIVIDUAL EMPLOYER UNDER THE FLSA, THAT THERE IS A JOINT

EMPLOYER RELATIONSHIP BETWEEN ALL THE CORPORATE DEFENDANTS,

AND THAT PLAINTIFF IS NOT AN INDEPENDENT CONTRACTOR.

**Respectfully submitted,**

**CHRISTOPHER COCHRAN, ESQ.
J.H. ZIDELL, P.A.
300 71ST STREET, #605
MIAMI BEACH, FLA. 33141
PH: 305-865-6766
FAX: 305-865-7167
EMAIL: CNC02G@GMAIL.COM
F.B.N. 0084088
BY:      /s/ Christopher Cochran
CHRISTOPHER COCHRAN, ESQ.**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING WAS SENT SUBSEQUENT TO E-FILING ON EVEN DATE TO:**

**ALL LISTED CM/ECF RECIPIENTS**

**LEON FRANCISCO HIRZEL, IV
HIRZEL & DREYFUSS, P.A.
333 SE 2ND STREET, SUITE 2000
MIAMI, FL 33131
(305) 615-1617
FAX: (305) 615-1585
EMAIL: LEON.HIRZEL@HIRZELDREYFUSS.COM**

**ANDRE LOUIS DREYFUSS
HIRZEL & DREYFUSS, PA
333 SE 2ND AVE
SUITE 2700
MIAMI, FL 33131
305-615-1617
EMAIL: ANDRE.DREYFUSS@HIRZELDREYFUSS.COM**

**BY:**       /s/ Christopher Cochran
         **CHRISTOPHER COCHRAN, ESQ.**