UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 14-20716-CIV-TURNOFF

[CONSENT CASE]

YOJAN CABRERA and all others similarly )
situated under 29 U.S.C. 216(b), )
)
           Plaintiff, )
vs. )
)
SPEED SERVICES, INC. )
SPEED CONSTRUCTION SERVICES, INC. )
JOHN M HERNANDEZ, )
)
           Defendants. )
_____ )

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

COME NOW the Plaintiff(s), pursuant to Fed. R. Civ. P. 56 and SDLR 7.5 and file(s) their Statement of Material Facts in support as follows:

1. Defendants employed two or more employees. See Deposition of Yojan Cabrera ("Cabrera Depo") at 31:17-23. See also Deposition of John M Hernandez[1] ("Hernandez Depo") at 8:12-17. Plaintiff and these other employees regularly would use products that originated or were manufactured outside the State of Florida such as: sheet rock from Chicago, IL; concrete mix from California; durock also from Chicago, IL; and interior and exterior semi-gloss from Santa Ana, CA. See Affidavit of Yojan Cabrera ("Cabrera Aff.") at ¶4.

---

[1] Due to a scrivener error, the attached deposition transcript reads "John Fernandez", when it should read "John M Hernandez."

1

2.  For the year 2010, Defendant Speed Services, Inc. made gross sales in the number of $863,533. Deposition of Manuel Duarte ("Duarte Depo") at 6:18-20. For the year 2011, Defendant Speed Services, Inc. made gross sales in the number of $667,730. Duarte Depo at 7:9-13; see also Redacted Speed Services, Inc. Tax Returns ("Redacted SS Tax Returns"). For the year 2012, Defendant Speed Services, Inc. made gross sales in the number of $648,148. Duarte Depo at 7:20-25, 8:1-2; see also Redacted SS Tax Returns. For the year 2013, Defendant Speed Services, Inc. made gross sales in the number of $299,364. Duarte Depo at 8:15-18; see also Redacted SS Tax Returns. When asked why there was a dip in gross sales between 2012 and 2013, Defendants' accountant Manuel Duarte testified that it was because Speed Services' accounts and clients were being moved over to Speed Construction Services. Duarte Depo at 15:5-13. As for Defendant Speed Construction Services, Inc., it made $137,485 in gross sales in 2012 and it made $1,916,887 in gross sales in 2013. See Redacted Speed Construction Service Tax Returns.

3.  Both Corporate Defendants, through John M Hernandez, would issue Plaintiff orders on work for jobs for both Speed Services, Inc. and Speed Construction Services, Inc. such as where to go, services to perform (whether to paint, to rope, etc), making deposits at bank, making deliveries, etc. Cabrera Aff. at ¶5.

4.  Both Speed Services, Inc. and Speed Construction Services, Inc., through John M Hernandez, would supervise Plaintiff both directly and indirectly; Hernandez would directly issue orders to Plaintiff up until last year, where he would then indirectly issue orders to Plaintiff via a proxy. Cabrera Aff. at ¶6.

5. Defendant Speed Services, Inc. would "sub" Plaintiff to Defendant Speed Constructions Services, Inc., who would do the same job functions between the two companies. Hernandez Depo at 10:2-13, 11:1-5, 66:8-15.

6. Defendant Speed Services, Inc. and Speed Construction Services, Inc. both employed the same employees. See Deposition of Wilfredo Irizarry ("Irizarry Depo") at 5:7-14. Per the testimony of co-worker Lazaro Guerra, both entities were the same company. See Deposition of Lazaro Guerra ("Guerra Depo") at 5:1-6. Fellow co-worker Luis Niara also testified that he believed both companies to be one in the same and that the same employees were used across both incarnations. See Deposition of Luis Naira ("Naira Depo") at 4:20-25, 5:1-18.

7. Plaintiff received two sets of checks: one from Defendant Speed Services, Inc. and one from Speed Construction Services, Inc. Cabrera Depo at 66:20-25, 67:1. Specifically, Speed Services, Inc. would pay through ADP and Speed Construction would pay through a direct company check. Cabrera Aff. at ¶7. Both companies provided Plaintiff with W-2's. Cabrera Depo at 85:9-14.

8. Defendants Speed Services, Inc. and Speed Construction Services, Inc. maintain the same office. Hernandez Depo at 11:6-8; Guerra Depo at 14:18-25.

9. Both Corporate Defendants paid the rent on the same office they occupied together, alternatingly. Hernandez Depo at 67:9-19.

10. Defendant Speed Services, Inc. lacks the license to perform work outside of Miami-Dade County, but Defendant Speed Construction Services, Inc. has

such license and it allows Defendant John M Hernandez to extend the Defendants' business beyond the county to the rest of Florida. Hernandez Depo at 12:17-25, 13:1-8.

11. Between the two Corporate Defendants, each company would loan the other company money to meet debts, such as paying for goods or covering payroll. Hernandez Depo at 66:23-25, 67:1-8.

12. Per the testimony of Manuel Duarte, "Speed Construction Services is assuming the accounts, the clients that Speed Services – that used to be Speed Services." Duarte Depo at 15:5-13.

13. Defendant John M Hernandez is Vice President of Defendant Speed Services, Inc. Hernandez Depo at 5:16-21. Defendant Hernandez is also President of Defendant Speed Construction Services, Inc. and was previously its Vice President. Hernandez Depo at 11:17-19, 12:1-16.

14. Defendant John M Hernandez signed checks for on behalf of the Corporate Defendants for Plaintiff's work. Hernandez Depo at 32:3-7, 72:6-8.

15. Defendant John M Hernandez was a signatory on both of Defendant Speed Services, Inc.'s business operating accounts. Hernandez Depo at 39:4-25.

16. Defendant John M Hernandez, on behalf of both companies, determined employees' hourly rate of pay and had the authority to hire/fire employees and acted upon such authority. Hernandez Depo at 72:9-16; Irizarry Depo at 20:6-8. Cabrera Aff. at ¶8.

17. Defendant John M Hernandez owns 60 to 50 percent of Defendant Speed Services, Inc. Hernandez Depo at 40:10-11.

18. Defendant John M Hernandez by his own admission hired Plaintiff. Hernandez Depo at 32:11-13. Cabrera Aff. at ¶8.

19. Defendant John M Hernandez by his own admission interviewed Plaintiff. Hernandez Depo at 32:14-25, 33:1-24.

20. Defendant John M Hernandez terminated Plaintiff. Cabrera Aff. at ¶8.

21. Defendant John M Hernandez himself provided Plaintiff with welder training. Cabrera Depo at 30:13-20.

22. Defendant John M Hernandez routinely would give orders to Plaintiff. Cabrera Depo at 31:9-16, 62:25, 63:1-12, 71:17-21; Guerra Depo at 19:5-20. By his own admission, Defendant Hernandez would supervise Plaintiff's work and others have testified he supervised work. Hernandez Depo at 40:12-13; Guerra Depo at 16:10-17, 20:4-13; Naira Depo at 16:1-25, 17:1-5. Defendant Hernandez would also assign work and schedules to Plaintiff as well as what workers were assigned to what sites. Cabrera Depo at 46:13-24; Hernandez Depo at 41:17-19; Irizarry Depo at 18:8-12; Guerra Depo at 16:4-9. Plaintiff was never instructed that he had other supervisors other than Defendant Hernandez and would routinely follow out orders give by Hernandez. Cabrera Depo at 52:23-25, 53:1.

23. Defendants' business performs building maintenance which includes performing painting, tiling ("setting tiles, floor tiles, wall tiles"), and "whatever has to do with building maintenance." Hernandez Depo at 5:22-25, 6:1-21. Plaintiff's job duties primarily are integral duties normal to Defendants' business, such as changing tiles, sheetrock, welding, ceiling tiles,

and painting parking lots and walls. Cabrera Depo at 29:14-25, 30:1-6. While the work Plaintiff performed was integral to the business, he did standard maintenance work no different from any other employee for either company and his duties were not a specialty. Cabrera Aff. at ¶10, 14.

24. The Defendants provided Plaintiff a company van for travel. Cabrera Depo at 32:24-25, 33:1.

25. Plaintiff did not provide his own materials but rather used a company provided card- provided by Defendants- to purchase materials. Cabrera Depo at 55:18-25, 56:1-6; Hernandez Depo at 16:3-24. The company card and aforementioned vehicle were both provided by Speed Construction Services, Inc. but used for all jobs. Cabrera Aff. at ¶11.

26. The Defendants provided meals, lodging, and transportation (via the aforementioned company vehicle) for the out of town worked Plaintiff performed for Defendants. Cabrera Depo at 58:4-25; Hernandez Depo at 73:7-11. Defendant John M Hernandez even testified to paying for an apartment for Plaintiff for 2 months. Hernandez Depo at 64:8-15.

27. Plaintiff did not work side jobs for any other employer or entity beside Defendants. Cabrera Depo at 77:13-16.

28. Defendant John M Hernandez made all managerial decisions regarding Plaintiff's work and Plaintiff did not make such decisions, nor did he stand to profit or loss from his decisions on the job. Cabrera Aff. at ¶12.

29. Plaintiff never hired helpers or had the authority to hire helpers. Cabrera Aff. at ¶13.

30. Until his termination, Plaintiff's employment with Defendants was a permanent fixture with Defendants, working all day and even sometimes on the weekends, having worked there as a regular employee since 2010, except for a personal sabbatical in 2011. Cabrera Aff. at ¶15.

**Respectfully submitted,**

**CHRISTOPHER COCHRAN, ESQ.
J.H. ZIDELL, P.A.
ATTORNEY FOR PLAINTIFF
300 71ST STREET, #605
MIAMI BEACH, FLA. 33141
PH: 305-865-6766
FAX: 305-865-7167
EMAIL: CNC02G@GMAIL.COM
F.B.N. 0084088
BY:____/s/ Christopher Cochran_____
CHRISTOPHER COCHRAN, ESQ.**

**CERTIFICATE OF SERVICE**:

**I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING WAS PROVIDED SUBSEQUENT TO E-FILING TO:**

**LEON FRANCISCO HIRZEL, IV**
**HIRZEL & DREYFUSS, P.A.**
**333 SE 2ND STREET, SUITE 2000**
**MIAMI, FL 33131**
**(305) 615-1617**
**FAX: (305) 615-1585**
**EMAIL: LEON.HIRZEL@HIRZELDREYFUSS.COM**

**ANDRE LOUIS DREYFUSS**
**HIRZEL & DREYFUSS, PA**
**333 SE 2ND AVE**
**SUITE 2700**
**MIAMI, FL 33131**
**305-615-1617**
**EMAIL: ANDRE.DREYFUSS@HIRZELDREYFUSS.COM**

 **BY:**     /s/ Christopher Cochran                           
           **CHRISTOPHER COCHRAN, ESQ.**